Our fourth case this morning is Casillas v. Madison Avenue Associates. Mr. Albanese. Good morning, Your Honors. May it please the Court, Counsel. We are here today because the District Court found that Plaintiff Casillas lacked standing for her claim under the Fair Debt Collection Practices Act. Ms. Casillas believes that this Court should follow the Second Circuit's decision in Struble and find that she did have standing to bring her claim. In Struble, the Court found that a consumer had standing when she alleged that a credit card issuer had violated the Truth in Lending Act by failing to disclose that certain disputes regarding charges had to be made in writing or electronically to be effective. The Court concluded that the plaintiff had standing for this claim, finding that a consumer who has not given notice of his obligations is not likely to satisfy them and thereby unwittingly lose the very credit rights that the law affords them. The Second Circuit held that the omission impaired the consumer's interest in the informed use of credit, a core purpose of the Truth in Lending Act. The Court found that the injury, namely the statutory violation, was sufficient for standing and that the plaintiff was not required to allege any further harm beyond the statutory violation. Here, similar to the Truth in Lending Act, Congress enacted the Fair Debt Collection Practices Act to help consumers make informed decisions about how to respond to debt collection activities. And to do this, the statute requires through Section 1692G that a debt collector send an initial debt collection notice that, among other things, educates the consumer regarding the consumer's rights under the statute and how to effectively assert those rights. Here, Madison's notice failed to inform the recipients, including Plaintiff Casillas, that in order to effectively assert her rights under the statute to have the debt validated or obtain the identity of the original creditor, she had to make that request in writing to the debt collector. By omitting the in-writing requirement, Madison's notice thwarted the informational and educational purposes of the FDCPA and posed an appreciable risk of harm to consumers and their ability to make informed decisions about how to respond to debt collection. The question is whether it raised an appreciable risk of real harm to her. Not in general. We know what the statute says and what its purpose is. What's the concrete injury to her? She wasn't going to contest this debt, or at least we don't have any allegation that she wanted to contest the debt or make a request for identification of the originator of the debt. Sure. Her injury was that she was denied the information that if she wanted to contest the debt, she would have to make that dispute in writing. That's a pure procedural injury. What's the actual harm? What's the actual injury to her concretely? Right. The denial of information is the injury, Your Honor, and the Supreme Court recognized in Spokio that where procedural harm implicates a concrete harm to be protected by a statute enacted by Congress, that in some circumstances is enough to have standing. But here the requirement that she have the necessary information for challenging the debt, the obligation to make that objection in writing, right, what it's really trying to do is protect her in contesting. That's the injury that Congress was trying to protect against, right? Well, I think the in writing requirement in general is a protection for the debt collector so that there's proof that a debtor made a dispute. But she's not harmed by not having the information. She's harmed by not registering the objection properly. I think she is harmed by not having the information, Your Honor, because as part of the Fair Debt Collection Practices Act, Congress was concerned with debt collectors taking advantage of unsophisticated consumers. And to try to alleviate that harm, they require the debt collector to provide information regarding the consumer's rights under the law. And that is what the Second Circuit found in Struble under the Truth in Lending Act. There's nothing in the Struble decision that suggests that the plaintiff ineffectively made a dispute about a credit card charge. The Second Circuit recognized that there is a harm in failing to adequately disclose how a consumer is to dispute if they wanted to make it. And that is the type of procedural injury that by itself, because it implicates a concrete interest protected by the statute that Congress intended for, that is sufficient for spokio. But the harm would occur if she made an objection orally, and because they didn't tell her she had to do it in writing, she lost the ability to get a stay on any collection efforts. But there's no indication she was going to contest it in the first place. There's nothing in the complaint about it. You're given a chance to amend and you didn't amend it, which I can only assume means she never intended to challenge it. She did not challenge the debt, Your Honor. You're correct. But the harm is the denial of the failure to provide the information in the first place. And, Your Honor, you recognize that in your opinion on remand and genetos, when you recognize that under 1692G when certain information is not provided. Genetos had nothing to do with standing. Genetos had to do with whether or not there was a violation of the Fair Debt Collection Practices Act. It did not deal with spokio standing issues at all, even on appeal or when it got sent back to me because I got reversed. Your Honor, I could be wrong here, but I thought I read an opinion by you this morning where they challenged the standing and you stated that failure to provide information under 1692G is an injury because it is a denial of information sufficient for spokio purposes. And the idea that she somehow had to detrimentally rely on the information is inconsistent with the Supreme Court's decision in Havens v. Coleman Realty Court where there were tester plaintiffs who knew that they were going to receive false information and had no intention on relying it or acting on it other than to give them the ability to bring a lawsuit. And here the Supreme Court, Justice Thomas' opinion. But in that case, in Havens Realty, the point of that was to try to check potentially discriminatory behavior on the part of the realtors. Here the focus is the consumer and equipping the consumer to protect the consumer's interests. Right. It's different. Well, part of protecting the consumer's interests is making sure that she's fully informed of her rights and how to effectively assert them. And this court for the Spokio decision did not purport to upend standing law. It didn't explicitly overrule any particular case. In fact, it cited all of its prior precedents. It didn't overrule the Ninth Circuit. It simply remanded back to the Ninth Circuit. And on remand, the Ninth Circuit held that there was standing and the Supreme Court denied certiorari. And this court for years has held that under the hypothetical, under sophisticated consumer standard, under the FDCPA, that it's unimportant whether the plaintiff was misled or deceived due to an insufficient debt collection letter. And in Bartlett v. Hebel, it's not even required that a plaintiff have read the letter to make a claim. And I understand the district court sent some tension between those decisions and Spokio. And the way the district court resolved those is by saying Spokio is a standing decision. Those are liability. But the way I think in this court's decades of jurisprudence using the unsophisticated consumer standard, what they were recognizing is that when a debt collector sends an incomplete or misleading debt collection notice, that poses a harm to all of the recipients and a risk of harm to all of the recipients that have sought to be protected by the FDCPA and is an actual injury. And I will reserve the rest of my time for rebuttal. Thank you. Mr. Brannett. May it please the court, counsel. Under the strange circumstances of this case, I have some concern I may have said too much already, so I'll keep my comments brief, as neutral as I can or independent as I can, and answer any questions you have. But I think the answer to this case depends on the answer to the question, so? So? She didn't get the words in writing. The question is, so? And if there's no answer to that or if the answer to the question, so, doesn't match up with the harm Congress was trying to prevent or the interest it was trying to protect, then there is no standing. Let me ask you this question. Do you think that this is a matter of Congress not having tried to confer standing in this situation, or do you think this is a case of Congress trying to confer standing, kind of maybe in a Lujan sense, but exceeding Article III because this doesn't satisfy Article III's requirements? Well, I don't think it's clear at all that Congress tried to create standing by this statute. I think, as counsel pointed out, the writing requirement is really one of effectiveness of the credit system, where you have to have some proof that this dispute actually arose. It would render it unworkable if they could do it orally. So the writing is essential to the protection of both parties. But the harm that they're trying to prevent here is what you pointed out, what Judge Sykes pointed out, which is an ineffective attempt to at least temporarily stop the collection efforts and not just a lack of information, which may or may not be useful, depending on what they intend to do after that. So there definitely would have been standing if she had either orally intended or tried to dispute the debt, or even if she disputed the amount on the letter or the identity of the original creditor. But we don't even have those facts. So all we have is a hypothetical possibility of if, and that's pretty much the phrase they use throughout their briefs, is she lost information that would have been necessary if she wanted to then go on and dispute the debt or ask the identity of the original. But at this point, that's just speculative, and it's contingent on unknown future events that just haven't happened at that point. There is some tension. In any event, that analysis, compare the actual claim, the answer to the question, so to the harm Congress sought to prevent or the interest it sought to protect, that, in my view, reconciles all the cases, especially the Circuit Court of Appeals cases, that all the parties have cited here. I recognize there are a lot of district court opinions that agree with them, but there aren't any appellate courts that do that, and the sort of position that the district courts have been taking are inconsistent with Groshek and Myers and the other cases from this court, as well as potentially Spokio. The only one, as they rely on Strudel, but even there, I think the distinction is answered by the fact that the court there found there was standing for two, but not another two, two different issues. And they pointed out, for example, well, you don't have an advance payment, so the fact that they didn't give you the disclosures about automatic payment, I should say, rather than advance, that's immaterial. The fact that you didn't disclose up front that you have an obligation to respond to a dispute within 30 days or whatever, also, that's contingent on future events, so it's really not, and you haven't shown that that ever became an issue, so that you don't have standing for that. So the main ruling in Strudel that they're relying on, I shouldn't have skipped breakfast, the main ruling that they're relying on is the fact that up front, when you're opening up this credit account, you should have told the potential debtor that if you have unsatisfactory purchases, you have to raise those in writing. The only distinction, well, one distinction that I see between that issue and the one in this case is that that's an interest that Congress sought to protect, which is to advise a debtor up front before the relationship even begins with what that debtor needs to do and may impact her credit practices thereafter. On top of that, that kind of a situation, I think it's inevitable that there's going to be a substantial majority of people that are going to eventually have an unhappy purchase, so to speak, and so that kind of issue is something that Congress did legislate standing there for that interest because of the fact that it's almost inevitable that a good number of people are going to be dissatisfied with a purchase, and we want them to know what they need to do beforehand, before they even enter into this credit relationship, but that's a little bit different than here where it's not inevitable that there's going to be a dispute. In fact, it's very rare, and not only that, but it's not going to affect how you use that credit. So I think there is a possible distinction, but the answer to the question lies in whether Struble, that holding applies to this situation, whether it's distinguishable or not, and whether it's crucial here that the plaintiff is not claiming that she ever intended to take advantage of the information she claims she should have had. So if there are no questions. Thank you. Thank you. Mr. Albanese. Thank you, Your Honors. While I was sitting down, my co-counsel provided me the citation to what I believe is Judge Durkin's opinion that addressed standing, and it's 2016. It's a Lexis site, U.S. District Lexis, 189250. That's star pages 4 and 5. So just last year, post-Spokio, the Seventh Circuit decided the case of Pantoja, which also involved a reportedly misleading debt collection letter, and in that case the court didn't address whether the plaintiff ever relied on the misleading information and was ever hurt by the purportedly misleading information, and yet it granted summary judgment for the consumer. And I think this just illustrates that there is a harm. There's a harm to sending out to consumers, as opposing counsel recognized, a misleading or incomplete debt collection letter. A lot of consumer protection statutes that Congress has enacted are in large part anti-ignorance statutes. They're designed to educate consumers about what rights they have, and by failing to educate the consumer about what rights they have in the event they want to dispute, that posed an appreciable risk of harm to an interest that Congress sought to protect by enacting the Fair Debt Collection Practices Act. So I respectfully ask that the court reverse this report. Thank you. Thank you. Our thanks to all counsel. The case is taken under advisement.